UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Patricia Taylor</u>

      v.                        Civil No. 06-cv-287-JD
                                     Opinion No. 2006 DNH 138

<u>United States of America</u>

<u>O R D E R</u>

Patricia Taylor, proceeding pro se, seeks relief from her
conviction and sentence pursuant to 28 U.S.C. § 2255.  Her
conviction is based on her guilty plea to three counts of bank
fraud for which she received a fifty-one month sentence and was
ordered to pay a fee of $300 and restitution of $1,700.  In
support of her § 2255 motion, Taylor asserts that she received
constitutionally ineffective assistance of counsel.  The
government opposes Taylor's motion.

<u>Standard of Review</u>

When a petition for relief under § 2255 is not dismissed
initially, the court must determine whether a hearing is
necessary.  Rule 8(a) of Rules Governing § 2255 Proceedings.  A
hearing is not necessary "where a habeas motion (1) is inadequate
on its face, or (2) although facially adequate is conclusively
refuted as to the alleged facts by the files and records of the

case." <u>Carey v. United States</u>, 50 F.3d 1097, 1098 (1st Cir.
1995).  When no evidentiary hearing is held, "[t]he court must
take the allegations contained in the petitioner's motion as
true, except to the extent that they are contradicted by the
record or are inherently incredible, and to the extent they are
merely conclusions rather than statements of fact."  <u>Id.</u>
(internal quotation marks omitted).


<u>Background</u>

      Taylor was arrested on March 15, 2004, at the Granite Bank
in Concord, New Hampshire, when her efforts to obtain a loan
raised the suspicions of bank employees who called the police.
Taylor then provided false account information to a Concord
police officer.  She had previously opened an account at that
bank with checks drawn on an account in Maryland that had
insufficient funds to cover the checks Taylor had written.
Before the Granite Bank realized the deficiency, between March 8
and March 12, 2004, Taylor withdrew $5,250 from the account.
Taylor states that the arresting officer opened a sealed envelope
containing the money she had withdrawn and removed the bills that
were banded together.  The police reported that $4,150 was
recovered at the time of her arrest.  Taylor contends that the
police seized $5,150 from her.

2

Taylor was indicted on two charges of bank fraud.  Taylor was initially represented by the federal public defender's office.  Taylor states that her counsel arranged for a competency assessment by Dr. Eric Drogin in April of 2004.  She asserts that Dr. Drogin found that she was under severe duress before she committed the crimes.  She also asserts that Dr. Drogin found that she had suffered one and possibly two nervous breakdowns between July and November of 2003.  Taylor does not provide any results from that assessment.[1]

On June 10, 2004, Taylor hired private counsel, Charles O'Leary, and he represented Taylor during the remainder of the proceedings.  After reviewing her file, O'Leary advised Taylor that she would receive a twenty-four to thirty month sentence. Taylor's previous counsel had given her the same advice.  Taylor states that although O'Leary told her that he would file a motion for severance of count two from the remaining counts and that severance was important for her defense, he did not file a motion or otherwise pursue the issue.

---

[1]Taylor submitted a letter from Dr. Drogin, dated February 15, 2006, in which he responds to her letter of February 9, 2006, asking him about issues pertaining to nervous breakdowns.  In his letter, Dr. Drogin summarizes some of the information Taylor had provided during his examination of her in May of 2004.  Dr. Drogin does not provide an assessment or substantiate Taylor's statements about her emotional condition.

In mid-July of 2004, Taylor wrote to the Concord Police Department demanding return of property taken from her at the time of her arrest.  She stated that her car was impounded and that $4,150 was taken from her purse.  She also stated that neither her husband nor her attorney, Charles O'Leary, had been able to get information about her property.  The record does not include the police department's response to her letter.

Taylor contends that O'Leary told her that the prosecutor wanted "three pieces of information and if he was satisfied he wouldn't pursue the case."  Memorandum (doc. no. 1) at 2.  Taylor states that her husband provided information about an account she set up for a business loan from Wachovia Bank and information that the bank officer involved in approving the account had been arrested for fraud.  When Taylor provided that information, she says that O'Leary told her it would "wrap up the case" and that she would be released but two days later he told her that he could not use the information she had provided.  Taylor faults O'Leary for not hiring a private detective to investigate the circumstances of the Wachovia account.

Taylor's daughter died on January 8, 2005, and the funeral was held in Maryland on January 12, which Taylor was unable to attend because she was incarcerated.  Taylor states that she discussed her daughter's death with O'Leary.  She also states

4

that the circumstances of her life before and after the charges were brought against her caused extreme emotional disturbance.

Taylor contends that O'Leary pressured her into signing the plea agreement by telling her he had only one hour to return the signed agreement to the prosecutors or the agreement would be void.  Taylor asserts that she never received a copy of the plea agreement.  She also states that she was taking Valium at the time she signed the plea agreement because of severe depression and grief.

On January 12, 2005, the government filed an information charging Taylor with three counts of bank fraud.  On the day of the change of plea hearing, January 13, 2005, Taylor states that O'Leary brought a box of disorganized papers to court, which constituted her file.  She looked through the papers and found a document which, she believes, should have been submitted to the prosecutor.  She also states that she asked O'Leary why the plea agreement did not specify the sentence as being between twenty-four and thirty months and that he answered that the length of the sentence was agreed but never appeared in an agreement.

Taylor appeared in court, with counsel, on January 13, 2005. In response to the court's questions, she stated that she did not have an alcohol or drug problem, that she had never been treated for such a problem in the past, and that she was then taking

Ativan, which she identified as an anti-anxiety medication prescribed for her because of her daughter's recent death. Taylor testified that she had had enough time to talk with her counsel about the case, that she had told him everything she knew about the case, and that she was satisfied with his representation of her.  She testified that she had reviewed the plea agreement with her attorney and signed it freely and voluntarily.  She also denied that anyone had said or done anything to force her to enter the guilty plea.  She waived indictment and pled guilty to all three counts in the information.  The court accepted her pleas and set a date for sentencing that was later changed to May 31, 2005.

Taylor states that she was interviewed, with O'Leary present, in March of 2005, by Melissa Thibaud, a United States Probation Officer.  She contends that she received three copies of the presentence report on May 5, 2005, but that O'Leary did not review the report with her.  She noted that the instructions in the packet from Thibaud were for O'Leary to review the report with her and to make any corrections.  Taylor also noted that Thibaud requested documents about the custody of her grandchildren that Taylor's husband had sent to O'Leary two months previously.  Taylor claims she made corrections and sent the packet of copies of the presentence report back to O'Leary

6

who then lost the packet and ignored the corrections she had
made.  Taylor also states that O'Leary lied to her and told her
that he had submitted her corrections to Thibaud.  She notes that
O'Leary sent a letter to Thibaud on May 10, 2005, stating that
Taylor had no factual or legal objections to the presentence
report.

     The presentence report states that Officer Miguel Ceborello
of the Concord Police Department recovered $4,150 from Taylor
when he placed her under arrest.  The property report form filed
by Ceborello after Taylor's arrest states that $4,150 was taken
from Taylor.  The plea agreement also states that $4,150 was
recovered at the time of her arrest.  The presentence report
states in the "Victim Impact" section, however, that Taylor
agreed as part of the plea agreement to permit the Concord Police
to deliver the money that was recovered from her at the time of
the arrest and that "[a]ccording to Susan Shanoff of Granite
Bank, the bank has received $3,650 from the Concord Police
Department."  Presentence Report ¶ 12.  As a result, the
restitution amount still owed to the Granite Bank was reported to
be $1,700.

     In the criminal history section, the presentence report
lists thirty-three adult criminal entries that resulted in a
total of forty-five criminal history points.  Taylor's crimes of

7

conviction were theft, passing bad checks, and forgery.  Based on the Sentencing Guidelines, forty-five points establishes a criminal history category of VI.

The section of the presentence report titled "Offender Characteristics" describes Taylor's family, including her ex-husbands who were alcoholic and abusive, along with other family members with substance abuse problems.  The report states that Taylor has had mental health and emotional problems.  Although medication was prescribed for those conditions, Taylor denied ever taking the prescribed medication, and one counselor confirmed that Taylor had not taken the medication prescribed for her.  With respect to substance abuse, the report states as follows:

> Taylor admitted to consuming alcohol occasionally usually during social events.  She denied drinking to intoxication or any problems associated with alcohol. The defendant disclaims any history of substance abuse or participation in treatment for substance abuse issues.

Presentence Report ¶ 101.  On May 10, 2005, O'Leary sent a letter to Thibaud in which he stated that Taylor had no factual or legal objections to the presentence report.

Taylor states that O'Leary told her before sentencing that her claim that she had $1,000 more than the police reported in her possession at the time of her arrest could not be proven.  He

8

said that he would look into that issue, however, and the $500 discrepancy between the amount that was reportedly taken from her at the time of her arrest and the amount delivered to Granite Bank after she was sentenced.  On the day of the sentencing hearing, May 31, 2005, Taylor states that she asked O'Leary if she would receive twenty-four to thirty months as her sentence. He replied that the presentence report recommended a fifty-one month sentence and that was what she would receive.

At the sentencing hearing, O'Leary told the court that the defense had no objection to the presentence report.  Taylor had prepared a brief statement that was read by O'Leary.  In her statement, Taylor acknowledged her extensive criminal history, described problems she had had due to avoiding responsibility for her actions, and described problems with her family and finances. Taylor was sentenced to serve fifty-one months, to pay a fine of $300, and to pay restitution to Granite Bank in the amount of $1700.  Judgment was entered on June 2, 2005.

Taylor alleges that O'Leary stopped communicating with her after she filed a professional conduct complaint against him. Proceeding pro se, Taylor filed a notice of appeal on June 10, 2005, in which she asked that counsel be appointed to represent her because she was indigent.  From that point forward, Taylor has represented herself in the proceedings in this court.

9

On June 1, 2005, Taylor wrote to Melissa Thibaud, the probation officer who prepared her presentence report, asking if she had received a copy of the presentence report with Taylor's corrections and explanations.  On June 10, 2005, Taylor wrote to Thibaud again and enclosed a copy of the criminal history section of the presentence report with her corrections and notations. Taylor wrote again on July 1, after she had been transferred to the Federal Correctional Institution at Danbury, Connecticut, ("FCI Danbury") to give Thibaud her contact information.

Taylor also wrote to the prosecutor, Assistant United States Attorney Kinsella, on June 1, 2006, asking about the money that was taken from her at the time of her arrest.  She stated that the arresting officer took $5,000 from a sealed packet and an additional $150 from her purse.  Based on those representations, she argued that the $3,650 returned to Granite Bank after her sentencing was $1500 less than the amount taken from her.

Kinsella responded to Taylor's letter by writing to O'Leary and explaining that the arresting officer indicated he had recovered $4,000, not $5,000, as the amount of money from Taylor's withdrawal.  Kinsella noted that Taylor had admitted that amount several times, including in her correspondence and the plea agreement, and had not raised the $5,000 theory until recently.  Kinsella acknowledged the discrepancy between the

10

$4,150 the arresting officer reported and the $3,650 that was returned to the bank.  He explained that he contacted Lieutenant Walter Carroll at the Concord Police Department about the discrepancy.  Carroll told Kinsella that the officer who prepared the money to be returned to the bank found only $3,650 and that Carroll investigated and determined that the arresting officer had miscounted the money he recovered at the time of Taylor's arrest.  He confirmed that $3,650 was the correct amount.

The court denied Taylor's motion for return of $1,500 on September 15, 2005, due to lack of jurisdiction and lack of merit.  Taylor appealed that decision.

Taylor wrote to the court on July 11, 2005, about receiving mental health therapy and participating in a residential drug and alcohol treatment program available at FCI Danbury.  She reported that she would need a court order to be admitted into a program. The court referred Taylor's request to the probation department for review.

On July 21, Clayton Foster, Deputy Chief United States Probation Officer, responded.  Foster reported that he had reviewed the presentence report, had spoken with Thibaud about the report and Taylor, and had spoken with Taylor's counselor at FCI Danbury.  Foster confirmed that the presentence report indicated that Taylor did not have an alcohol or other substance

abuse problem and that the presentence report covers Taylor's
mental health history.  Taylor's counselor told Foster that
contrary to Taylor's representations in her letter to the court,
Taylor had not yet been screened at FCI Danbury and she had not
advised Taylor to seek modification of the judgment in her case
to establish her eligibility for a treatment program.  Foster
concluded that facts did not exist to warrant amending the
judgment in Taylor's case to include a requirement for treatment
for alcohol or substance abuse.

      The court denied Taylor's request for an order to amend
judgment based on the probation department's report.  The court
noted that Taylor would be screened by the Bureau of Prisons and
that "if it is determined that she is in need of counseling or
any program, whether it be for mental health or for drug or
alcohol problems, she will be placed in an appropriate program."

      On August 22, 2005, Taylor filed a motion to amend the
presentence report.  In her motion, Taylor represented that she
had requested many changes in the presentence report but that
neither O'Leary nor Thibaud thought her changes were necessary.
She stated that amendment was necessary to make her eligible for
substance abuse treatment and that, contrary to the presentence
report, she was an alcoholic.  The court again referred the
matter to the probation department for review.  Foster reported

                              12

that he had contacted Taylor's counselor at FCI Danbury who stated that she had referred Foster to the substance abuse counselor at the prison.  The counselor also confirmed that Taylor's screening had found her eligible for treatment except that her problems were not corroborated in her presentence report.

The substance abuse counselor told Foster that Taylor would be eligible for the treatment program only if her statements about alcohol and substance abuse were found to be true, which required corroboration that was not in the presentence report. Foster found that Taylor had reported different experiences about substance abuse to Thibaud and to the FCI Danbury counselor, undermining Taylor's credibility.  He also talked with O'Leary who reported that he was present and recalled Taylor's presentence interview with Thibaud and that the report was accurate.  He also confirmed that all of the corrections Taylor had requested to the presentence report pertained to her criminal history, not to information about her use of alcohol or other substances.  Foster concluded that corroborating information was lacking to support Taylor's recent self-reports of drug and alcohol abuse and noted that her reports "appear[] to have coincided with Taylor becoming aware of the sentence reduction benefits to the 500 hour program."  The court denied Taylor's

motion because the probation department's review did not find
sufficient substantiation to support the requested change.

Taylor filed separate appeals of the court's decisions
denying her motion for money to be returned to her and her motion
to amend the presentence report.  The First Circuit consolidated
the appeals and affirmed both decisions.


<u>Discussion</u>

In her motion for relief under § 2255, Taylor claims that
O'Leary's representation of her constitutes ineffective
assistance of counsel based on a multitude of alleged errors and
deficiencies.[2]  Taylor identifies four issues in her memorandum
in support of her motion for § 2255 relief:  the plea agreement,
restitution, the presentence report, and "evidence."  In her
response to the government's objection to her § 2255 motion,
however, Taylor limited the issues she is raising in support of
relief.

Taylor stated unequivocally that she is not questioning her
plea or her sentence.  Instead, the issues she is pursuing are

---

[2]Taylor alleges that O'Leary withheld evidence that the
prosecutor had requested, lost documents, never reviewed the
presentence report or made her corrections to it, made promises
that were not kept as to the length of her sentence, and did not
pursue an issue about the amount of restitution.  She also
complains about the circumstances of her guilty plea.

14

the presentence report and restitution.  She stated that she
included details about lost documents, rushed decisions, missed
deadlines, and miscommunication with O'Leary only to show a
pattern of ineffective representation.  Therefore, the court
interprets Taylor's claims in support of her request for § 2255
relief to be (1) that she received constitutionally ineffective
representation due to O'Leary's alleged failure to submit her
corrections of the presentence report to the probation department
and (2) due to O'Leary's failure to pursue her assertions that
more money was taken from her by the Concord police than was
returned to Granite Bank.

     To succeed on her ineffective assistance of counsel claim,
Taylor must establish that her counsel's performance was
deficient and that the deficiency prejudiced her defense.  United
States v. Colon-Torres, 381 F.3d 76, 85 (1st Cir. 2004) (citing
Strickland v. Washington, 466 U.S. 668, 687 (1984)).  Deficient
performance, in this context, means that "counsel made errors so
serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment."  Id.  Counsel's
deficiency prejudices the defense only if there is a reasonable
probability that but for counsel's errors the outcome of the
proceedings would have been different and more favorable to the
defendant.  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

15

A.  Presence Report

        Taylor contends that O'Leary provided ineffective assistance
when he failed to consult with her about the presentence report
and failed to submit her corrections to the probation department.
She asserts that if her input had been sought and her corrections
and explanations had been submitted to the probation department,
her criminal history would have been reduced, resulting in a
lower criminal history score.  She also contends that her
statements about her alcohol and drug use were mistaken because
she did not realize that she had an alcohol or drug problem at
the time of the interview.

        1.  Criminal history.

        For purposes of assessing a claim of ineffective assistance
of counsel, the court may consider whether the asserted error
prejudiced the petitioner without first finding a constitutional
deficiency in her counsel's representation.  See, e.g., United
States v. Moran, 393 F.3d 1, 11 (1st Cir. 2004).  Taylor asserts
that if her corrections to the criminal history section of the
presentence report had been submitted to the probation
department, her criminal history score would have been lower,
resulting in a shorter sentence.  Therefore, the court will

review her corrections to see if they would have made a
difference.[3]

Most of Taylor's notations point out that certain listed
offenses were consolidated for purposes of the legal proceedings
against her.  The presentence report indicates the same thing.
Therefore, those notations, if considered, would not have changed
Taylor's criminal history score.  In other places, Taylor
provides explanations for the charges against her and corrects
dates.  Again, those notations, if considered, would not have
changed her criminal history score.  Therefore, the record
establishes that Taylor cannot show she was prejudiced by her
counsel's alleged failure to submit her corrections to the
presentence report to the probation department.


2.  Alcohol and substance abuse.

To the extent Taylor argues that O'Leary's representation
was constitutionally deficient because the presentence report did
not include information about alcohol and substance abuse, she
has not provided any basis for that claim.  The record shows that
Taylor herself did not understand that she had any problem with

---

[3]Taylor's criminal history yielded a score of forty-five
when only a score of thirteen was necessary to reach Criminal
History Category VI.  See U.S.S.G. Ch. 5, Pt. A.

17

alcohol or drug use until she underwent the screening process at
FCI Danbury.  Therefore, O'Leary's representation was not
deficient for failing to correct the presentence report on the
issue of alcohol and substance abuse, when that issue did not
arise until after Taylor began serving her sentence.

B.  <u>Restitution</u>

     Taylor also alleges that O'Leary was constitutionally
ineffective because he did not pursue her claims that the Concord
police under-reported the amount of money that was recovered from
her at the time of her arrest.  She claims that she had $5150
when she was arrested rather than only $3650, which was the
amount returned to Granite Bank.  The record does not indicate
whether or to what extent O'Leary investigated the discrepancy in
the amounts of money taken from Taylor.  In response to Taylor's
pro se inquiry, however, Assistant United States Attorney
Kinsella addressed the issues she raised.

     As Kinsella noted, Taylor has stated repeatedly that she had
$4150, as the police report indicated, when she was arrested.
Taylor contends that her claim of having $5000 is based upon
information in the presentence report, which notes that she
withdrew $5250 from the Granite Bank account between March 8 and
March 12 of 2004.  She was not arrested until March 15.  Taylor

18

provides no credible basis to believe that she had $5000 in a sealed withdrawal envelope on March 15 when she was arrested. The police report and her own admissions to the contrary conclusively refute her claim.

Kinsella also inquired about the discrepancy between the amount the arresting officer recorded as the cash taken from Taylor, which was $4150, and the $3650 that was kept by the Concord police for restitution to the Granite Bank.  He found that the Concord police had investigated the discrepancy and determined that the arresting officer miscounted the money he took from Taylor.  Kinsella reported his findings to O'Leary. The record provides no basis to believe that if O'Leary had investigated the discrepancy himself, he would have uncovered something other than what Kinsella reported.  Kinsella's investigation confirmed that $3650 was the correct amount. Therefore, Taylor suffered no prejudice due to O'Leary's alleged failure to investigate the discrepancy in the amount of money taken from her at the time of her arrest.

C.   Summary

Because the record conclusively refutes Taylor's allegations
made in support of her motion for § 2255 relief, no evidentiary
hearing is necessary to resolve the motion.  In the absence of
any basis to find that Taylor's counsel was constitutionally
ineffective in his representation of her, her motion must be
denied.


Conclusion

For the foregoing reasons, the plaintiff's motion for habeas
corpus relief (document no. 1) is denied.

The clerk of court shall enter judgment accordingly and
close the case.


SO ORDERED.

                              Joseph A. DiClerico, Jr.
                              United States District Judge

December 7, 2006

cc:  Aixa Maldonado-Quinones, Esquire
     Patricia Taylor, pro se

20